UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-60172-Civ-SCOLA

HOUSING OPPORTUNITIES PROJECT
FOR EXCELLENCE, INC., *et al.*,

    *Plaintiffs*,

vs.

WEDGEWOOD CONDOMINIUM
ASSOCIATION, INC., *et al.*,

    *Defendants*.
_____/

## ORDER DENYING DEFENDANTS' MOTION TO DISMISS

THIS MATTER is before the Court on the Defendants' Motion to Dismiss (ECF No. 25). Having reviewed the Motion, the Response, and the relevant portions of the record, and for the reasons stated below, it is **ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss is **DENIED**.

I.    FACTUAL BACKGROUND

Plaintiffs are residents of Wedgewood Condominium ("Wedgewood") in Broward County and Housing Opportunities Project for Excellence, Inc. ("HOPE"), a private, federally-funded Florida non-for-profit dedicated to eliminating housing discrimination and promoting fair housing. Am. Compl. ¶¶ 2-16. Plaintiffs allege that the Defendants violated several provisions of the Federal Fair Housing Act, 42 U.S.C. § 3604, with practices that discriminate on the basis of familial status. The Plaintiffs also allege that the Defendants' allegedly discriminatory acts violated provisions of Broward Cnty. Ord. § 16½ - 35 and the Florida Fair Housing Act, Fla. Stat. §§ 760.20 - 760.37. The Defendants in this case include the condominium association that

operates Wedgewood, the Wedgewood Condominium Association, Inc., four members of the Board of Directors of that association, Morton Schultz, Marvin Krull, Nicholas Mauro, and John Maffucci, the corporation that Wedgewood hired to manage the community, Castle Management, Inc. ("Castle"), and one of the employees of that management corporation who served as the property manager at Wedgewood, Cindy Peraza.

It is undisputed that the Wedgewood Declaration of Condominium, created in 1978, included a provision that excluded children under 16 years of age from living at Wedgewood as follows:

> L. In recognition of the fact that the condominium has been and is being developed and the structures to be located therein, designed primarily for the comfort, convenience and accommodation of adult persons, the use of all the units in the condominium is hereby limited to permanent residents sixteen (16) years of age or older, except that children under such age may be permitted to visit and temporarily reside therein, provided that such temporary residence shall not exceed sixty (60) days in any one calendar year or sixty (60) days within any consecutive twelve (12) month period, whichever is less.

In 1998, Congress amended the Federal Fair Housing Act to include prohibitions against practices that discriminate on the basis of familial status. 42 U.S.C. §§ 3601-19. "Familial status" is defined by the Fair Housing Act, and the identical state and county laws relevant to this case, as "one or more individuals (who have not attained the age of eighteen years) being domiciled with . . . (1) a parent or another person having legal custody of such individual or individuals." 42 U.S.C. § 3602(k). It is undisputed that Wedgewood did not remove the discriminatory provision from its Declaration after the enactment of the amendment. On February 10, 2012, almost two weeks after this suit was filed, the Wedgewood Condominium Association held a Board ofDdirectors meeting that passed a formal Resolution amending the Declaration of Condominium by declaring that Section L would not be enforced, as follows:

WHEREAS, under current local, state and federal statutes, case law and/or other regulations, Article XVI, Section L, of the Declaration of Condominium of Wedgewood Condominium may not be enforceable.

RESOLVED, that Morton Schultz as President and Marvin Krull as Secretary of WEDGEWOOD CONDOMINIUM ASSOCIATION, INC., a Florida Non-Profit Corporation are and they are hereby authorized and directed to execute any and all documentation, including but not limited: this Resolution which recognizes that Article XVI, Section L, of the Declaration of Condominium of Wedgewood Condominium will not be enforced until it becomes legal to do so, if ever.

A portion of the allegedly discriminatory practices that gave rise to this claim involves Plaintiff Crystal McGee ("McGee"), who entered into a rental agreement in June 2011 with Lisa Sandell ("Sandell"), the owner of one of the 178 units at Wedgewood. Am. Compl. ¶¶ 31, 39. Sandell had purchased her unit in 2004, and had a fourteen year old son at the time. *Id.* at ¶ 37. She faced no difficulty in purchasing her unit and from 2007 to 2011, she rented the unit to other families with children under the age of 16 years. *Id.* at ¶¶ 27-38. Sandell sent McGee's rental application to Wedgewood on June 17, 2011. *Id.* at ¶ 40. According to the amended complaint, on July 9, 2011, a representative from Wedgewood, or the property manager of Wedgewood, called McGee to notify her that she could not move into Wedgewood because she had a child under the age of 16. *Id.* at ¶ 41. When McGee called Sandell to confirm the denial, Sandell told McGee that she had been present at the board meeting where McGee's tenancy had been approved and she could still plan on moving in on July 15, 2011. *Id.* Later that same week, the property manager of Wedgewood called McGee to ask her to attend a screening meeting at the Wedgewood clubhouse on July 15, 2011, the day she was scheduled to move in. *Id.* at ¶ 42. According to the complaint, McGee was "confused and upset" about this meeting which she believed would involve a vote on whether she could still move into Wedgewood despite having a

child under the age of 16. *Id.* According to the amended complaint, at the screening meeting she was approved for tenancy for a period of one year because of "hardship." *Id.* at ¶ 43.

The amended complaint pleads that the Defendants' discriminatory practices have deprived McGee of the right to equal housing opportunities regardless of familial status and that she would like to continue living in the Community with her child. *Id.* at ¶ 44-45. The amended complaint further pleads that the Defendants' discriminatory practices have harmed the other resident Plaintiffs by denying them the opportunity to live in a neighborhood free of discrimination and the benefit of socialization with families with children. *Id.* at ¶¶ 58, 62. The resident Plaintiffs allege they would like the option of selling or renting their premises to families with children and to have the option of having family members under 16 years of age reside with them. *Id.* at ¶¶ 59-60. Finally, the resident Plaintiffs allege that they have been harmed by being assessed for resources of Wedgewood that are used to discriminate against families with children. *Id.* at ¶ 62. The amended complaint also alleges that as a result of resident Plaintiffs' participation in this suit, they were advised that they cannot participate in any committees of the Wedgewood Condominium Association and that this constitutes retaliation against resident Plaintiffs for asserting their rights under the Fair Housing Act. *Id.* at ¶ 84-85.

According to the amended, at an unspecified time, a member of the Board of Directors at Wedgewood contacted HOPE regarding the Board's need for fair housing training. *Id.* at ¶ 46. On September 26, 2011, HOPE attempted to hand deliver materials regarding the Fair Housing Act to Defendants Maffuci and Peraza, which they refused to accept. *Id.* at ¶ 49. The amended complaint alleges that these Defendants responded to the attempted delivery of the materials by disclosing that they had evicted seventeen families in the past two years and had won every case. *Id.* Additionally, throughout September 2011, HOPE made three attempts to be placed on the

4

agenda of the Wedgewood board meeting for training on the Federal Fair Housing Act, including mailing two letters via certified mail with this request to Defendants Krull, Peraza, Maffucci, Schultz, and Mauro. *Id.* at ¶¶ 47-50. At some point, HOPE began an investigation into the housing practices of Wedgewood and "received other complaints from a real estate professional and others who have been victims of actual discrimination and have actually been denied housing from Wedgewood and Castle solely due to their familial status." *Id.* at ¶¶ 51-52. HOPE pleads that the discriminatory actions of the Defendants have injured HOPE by (a) interfering with HOPE's efforts and programs which were intended to bring about equality of opportunity to minorities and others in housing, (b) forcing HOPE to devote scarce resources to identify and counteract Defendants' unlawful housing practices, and (c) interfering with the rights of HOPE's constituents in Broward county to enjoy the benefits of living in an integrated commuting and thereby frustrating HOPE's mission and purpose. *Id.* at ¶ 56.

II.    LEGAL STANDARD AND ANALYSIS

A.  Legal Standard on Motion to Dismiss

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the Complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under Federal Rule of Civil Procedure 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.*

B. <u>Whether the Plaintiffs have Standing to Invoke this Court's Subject Matter Jurisdiction</u>

To satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant, and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The Defendants' argue that this Court lacks jurisdiction to hear this case because the individually named Plaintiffs do not have standing to maintain a cause of action against Defendants. Specifically, the Defendants maintain that the discriminatory provision in question did not cause any injury to the individually-named Plaintiffs because none of them have children other than McGee and she was allowed to live in Wedgewood with her child. Because none of the individually-named Plaintiffs have established that they personally suffered an "injury in fact" caused by the discriminatory provision, Defendants argue, there is no case or controversy at issue granting this Court jurisdiction over this action.

The Supreme Court has provided guidance on the boundaries of standing for plaintiffs bringing claims for discriminatory violations of the Fair Housing Act. In *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 208-10 (1972), the Supreme Court ruled the term "persons aggrieved" under the Federal Fair Housing Act included more than merely the persons who are the objects of discriminatory housing practices, and that the term is broad enough to encompass residents who were not the object of these practices but who suffered the injury of the

6

loss of important benefits of living in an integrated community. In dictum, the Supreme Court stated that the language of the Act was "broad and inclusive" and intended to create a definition of standing that is as broad as possible under Article III. *Id.* at 209-10. More recently, the Supreme Court has revisited the definition of standing under the Federal Housing Act and clarified its dicta in *Trafficante*. In *Thompson v. N. Am. Stainless, L.P.*, 131 S. Ct. 863, 869 (2011), the Supreme Court stated the dictum in *Trafficante* that the term "person aggrieved" reaches as far as permitted under Article III was too expansive and that "the term 'aggrieved' must be construed more narrowly than the outer boundaries of Article III." However, the Supreme Court ruled the term could not be limited to give standing only to those who were the object of discriminatory practices, holding that "if that is what Congress intended it would have more naturally have said 'person claiming to have been discriminated against' rather than 'person claiming to be aggrieved.'" *Id.* at 870. In so holding, the Supreme Court reaffirmed that such a narrow meaning of the term "contradicts the very holding of *Trafficante*, which was that residents of an apartment complex were 'persons aggrieved' by discrimination against prospective tenants." *Id.* In other words, individuals who were not the object of discriminatory housing practices could still establish standing as "persons aggrieved" if they could show that they had suffered an injury because of the discriminatory practice. The Supreme Court has acknowledged and accepted that loss of the benefit of living in an integrated community satisfies the injury requirement. *Trafficante*, 409 U.S. at 209-10.

Applying *Thompson* to the individually named Plaintiffs in the instant case requires this Court to find they have pled sufficient facts to establish their standing to bring this cause. The amended complaint pleads that the individually named Plaintiffs are residents of Wedgewood who "would like to enjoy the benefits of socialization with families with children" and "have

7

been harmed by the denial of the opportunity to live in a neighborhood free of discrimination." Am. Compl. ¶¶ 58, 61. As in *Trafficante*, the individually named Plaintiffs are persons aggrieved by discrimination against prospective tenants of Wedgewood. Contrary to the Defendants' assertion that the amended complaint must contain allegations of plaintiffs who have actually been denied housing due to their familial status, the *Thompson* case reaffirms that plaintiffs who have not been denied housing can still establish standing under Article III. Moreover, the amended complaint alleges that over the course of its investigation, HOPE received complaints from others "who have been victims of actual discrimination and have actually been denied housing from Wedgewood and Castle solely due to their familial status" and that two of the Defendants have stated that they have evicted 17 families in the past two years. Am. Compl. ¶¶ 52, 49. As stated by the *Trafficante* court, "[w]hat the proof may be is one thing," but the individually named Plaintiffs have pled an alleged injury by exclusion of families with children from Wedgewood and the loss of the benefit of socialization with such families. *Trafficante*, 409 U.S. at 209. Accordingly, the individually named Plaintiffs have standing to bring this action.

The Defendants' motion to dismiss does not challenge the standing of HOPE to maintain this action, perhaps because the case law makes clear that it has standing to file suit for Defendants' violations of the Federal Fair Housing Act. In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982), the Supreme Court found that a non-for-profit similar to HOPE which brought claims for violations of the Federal Fair Housing Act had standing based on the deflection of its time and money from counseling to legal efforts caused by the necessity of having to addressing the defendants' discriminatory practices. "If, as broadly alleged, petitioners' steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income homeseekers, there can be no question that the

organization has suffered injury in fact." *See also*, *Hous. Opportunity Project for Excellence, Inc. v. Key Colony No. 4 Condo. Assoc., Inc.*, 510 F. Supp. 2d 1003, 1009 (S.D. Fla. 2007)(finding HOPE had standing when it alleged that it had "devoted significant resources to identifying and counteracting [the defendant's] discriminatory policies, which frustrated the organization's counseling and referral services."). Accordingly, this Court would have subject matter jurisdiction over this action even if the individually named Plaintiffs lacked standing.

C. Whether the Defendants' actions after the filing of this suit moot the Plaintiffs' claims

The Defendants' argue that the Plaintiffs' amended complaint should be dismissed because all three of the Plaintiffs' claims are now moot. The Defendants argue the formal Resolution amending the Declaration of Condominium on February 10, 2012 moots counts I and II because the allegedly discriminatory provision is no longer in effect and there are no longer written publications of discriminatory documents. The Defendants also argue that count III for retaliation is moot because the Defendants have sent an email to Plaintiffs' counsel stating that no one is preventing the Plaintiffs from serving on any of the Wedgewood Condominium Association committees.

"To qualify as a case fit for federal-court adjudication, 'an actual controversy must be extant at all states of review, not merely at the time the complaint is filed.'" *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)(quoting *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). "Mootness is jurisdictional," and therefore must be decided as a threshold matter and requires dismissal if the court finds its jurisdiction lacking under this doctrine. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001). The burden of establishing mootness rests with the party seeking dismissal. *See Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979). "A case is

moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Ethredge v. Hail*, 996 F.2d 1173, 1175 (11th Cir. 1993).

Plaintiffs' claims seeking monetary relief cannot be mooted by any change in policy by Wedgewood, including a formal Resolution to its Declaration of Condominium. *See Havens*, 455 U.S. at 371 ("Irrespective of the issue of injunctive relief, [the plaintiffs] continue to seek damages to redress alleged violations of the Fair Housing Act . . . Given [plaintiffs'] continued active pursuit of monetary relief, this case remains 'definite and concrete, touching the legal relations of parties having adverse legal interests.'"). *See also Buckhannon Bd. and Care Home, Inc. v. W. Va. Dept. of Health and Human Res.*, 532 U.S. 598, 608-09 (2001)("so long as the plaintiff has a cause of action for damages, a defendant's change in conduct will not moot the case."); *Friends of Earth, Inc. v. Laidlaw Envtl. Serv. (TOC), Inc.,* 528 U.S. 167, 189 (2000)("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice" unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur."). The Defendants' amending of the Declaration of Condominium did not give Plaintiffs the relief they seek in these claims, namely monetary compensation. *See Jews for Jesus, Inc. v. Hillsborough Cnty. Aviation Authority*, 162 F.3d 627, 629 (11th Cir. 1998)("In this case, the airport's change of policy has already given Jews for Jesus the relief they seek - the ability to distribute literature at the airport - and there is therefore no meaningful relief left for the court to give."). This Court can still give Plaintiffs the meaningful relief they seek. Count II for discriminatory publications and count III for retaliation seek compensatory and punitive damages for Defendants' actions, and therefore are not moot.

Having found that counts II and III are not moot, the Court must decide whether Count I for violations of the Federal and Florida Fair Housing Acts and Broward Ordinance is moot. At the outset, the Court notes that "the mere voluntary cessation of a challenged practice does not render a case moot." *Id.* The Eleventh Circuit has established three factors a court must consider when deciding whether a Defendant's voluntary cessation of the challenged conduct moots the Plaintiff's claim: "(1) whether the challenged conduct was isolated or unintentional, as opposed to a continuing and deliberate practice; (2) whether the defendant's cessation of the offending conduct was motivated by a genuine change of heart or timed to anticipate suit; and (3) whether, in ceasing the conduct, the defendant has acknowledged liability." *Sheely v. MRI Radiology Network, P.A.*, 505 F.3d 1173, 1184 (11th Cir. 2007). Applying these three factors to the facts alleged in the complaint requires this court to find that Count I is not moot.

First, despite the Defendants' protestations that the challenged discriminatory provision has never been enforced, the amended complaint states that there are seventeen families who have been evicted and that HOPE has received complaints from victims who have actually been denied housing solely due to their familial status. Construing the amended complaint's allegations in the light most favorable to the Plaintiffs, the Court must accept these pled facts as true. The amended complaint pleads facts supporting the inference that the Defendants' challenged conduct of discriminating against residents with children is the result of continuing and deliberate practices, and that Plaintiff McGee's experience was not an isolated incident. Therefore this factor weighs in favor of finding that count I is not moot.

Second, *Sheely* counsels that a court should be "more likely to find that cessation moots a case when cessation is motivated by a defendant's genuine change of heart rather than his desire to avoid liability." *Sheely*, 505 F.3d at 1185-86. This factor requires the Court to consider the

intent behind the Defendants' cessation of the challenged conduct. The timing of the amendment of the Declaration of Condominium, two weeks after the filing of this suit, raises doubts about whether the cessation was motivated by a genuine desire to correct the Defendants' policies to conform with the Federal Fair Housing Act, or whether the cessation was intended to moot the Plaintiffs' claims and avoid liability. Further suggesting that the Defendants' cessation was motivated by the desire to avoid liability rather than complying with federal law, the amended complaint pleads that the Board of Directors at Wedgewood refused to accept training materials from HOPE regarding the Federal Fair Housing Act and rejected the attempts to receive training to learn how to comply with that Act. Am. Compl. ¶¶ 47-51. This factor also weighs in favor of finding that Count I is not moot.

Third, the Resolution only went so far as to state that the discriminatory provision would not be enforced until it becomes legal to do so, and did not actually remove the challenged provision from the Declaration of Condominium. This tepid approach to addressing the challenged provision raises doubts as to whether the Defendant truly acknowledges liability. "[A] defendant's failure to acknowledge wrongdoing similarly suggests that cessation is motivated merely by a desire to avoid liability, and furthermore ensures that a live dispute between the parties remains." *Sheely*, 505 F.3d at 1187. On the one hand, Defendants' have acknowledged the illegality of the challenged provision and have declared in their motion to dismiss that they are amenable to the entry of an order by this Court stating that "Article XVI, Section L, of the Declaration of Condominium of Wedgewood Condominium shall not be enforced until it becomes legal to do so, if ever." On the other hand, Defendants' deny that the challenged provision has ever been enforced and specifically that it was never enforced as to Plaintiff McGee. Their refusal of training and training materials on housing discrimination by

HOPE further suggests that Defendants have not truly acknowledged liability. Therefore, this factor also weighs in favor of finding that Count I is not moot.

Furthermore, to establish mootness based on the Resolution to the Declaration of Condominium, the Defendants bear the "heavy burden of showing that the illegal behavior cannot reasonably be expected to reoccur." *Sec'y of Labor v. Burger King Corp.*, 955 F.2d 681, 684 (11th Cir. 1992). A claim will not be moot unless it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Laidlaw,* 528 U.S. at 189. The language of the Resolution that the provision will not be enforced until it is legal to do so does not conclusively bar future Board of Directors, property managers, or others in positions of authority from passing another resolution to resurrect the challenged provision. In *Burger King Corp.*, the Eleventh Circuit was similarly concerned with the resurrection of a policy regarding child labor. The Eleventh Circuit noted that despite the fact that the corporate headquarters of Burger King changed the policy, the corporate office could not completely control the actions of local restaurant managers and, therefore, Burger King failed to show that the child labor policy would not be enforced again. "[A]lthough corporate management has advised them not to hire fourteen- and fifteen-year olds at all, restaurant managers have done so when faced with a severe labor shortage. These pressures are beyond the control of BKC management and there is no reason to believe that BKC will be any more successful now than it has been in the past." *Burger King Corp.*, 955 F.2d at 685. Therefore, the Resolution is insufficient to moot Count I because it does not make absolutely clear that the challenged conduct cannot reasonably be expected to reoccur.

D. <u>Whether the amended complaint fails to state any claims</u>

The Defendants argue that count I of the amended complaint fails to state a claim under the anti-discriminatory provisions of the Federal and Florida Fair Housing Acts and the Broward Ordinance because none of the Plaintiffs are members of a statutorily protected class. Raising the same arguments made regarding the Plaintiffs' standing to bring this suit, the Defendants argue that the Plaintiffs have not established that any of them were refused the opportunity to purchase or rent a unit within Wedgewood and that none of the resident Plaintiffs besides McGee have children or have ever attempted to have children reside with them at Wedgewood. However, Plaintiffs are not required to be members of a protected class to bring suit under the Federal Fair Housing Act; they are only required to show they suffered an actual injury as a result of the discriminatory practices. *See Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 103 n.9 (1979)("as long as the plaintiff suffers actual injury as a result of the defendant's conduct, he is permitted to prove that the rights of another were infringed."). In *Thompson* and *Trafficante* the Supreme Court established that individuals who were not the object of discriminatory practices can nonetheless state a claim for violation of the Federal Fair Housing Act based on the loss of the benefit of living in an integrated community. As stated earlier, the protections of the Federal Fair Housing Act are expansive enough to include resident plaintiffs who have not been the object of discriminatory practices but have been injured by being denied the opportunity and benefit of living in housing with families including children under the age of 16. Accordingly, the Plaintiffs have pled facts sufficient to state a claim for violations of the anti-discriminatory provisions of the Federal and Florida Fair Housing Acts and the Broward Ordinance.

The Defendants also argue that count II of the amended complaint fails to state a claim under the anti-discriminatory publication provisions of the Federal and Florida Fair Housing Acts because it contains no facts of instances in which the Defendants printed or promulgated

any discriminatory occupancy standards. "To establish a prima facie claim under section 3604(c), plaintiffs must prove that: (1) defendants made a statement; (2) the statement was made with respect to the rental of a dwelling; and (3) the statement indicated a preference, limitation, or discrimination on the basis of a protected class." *Miami Valley Fair Hous. Ctr. Inc. v. The Connor Grp.,* 805 F. Supp. 2d 396, (S.D. Ohio 2011). "The governing regulations interpret this provision to cover 'all written or *oral* notices or statements by a person engaged in the sale or rental of a dwelling.'" *Id.* (citing 24 C.F.R. § 100.75(b)). The amended complaint alleges that Plaintiff McGee was orally notified that she could not rent a unit at Wedgewood because she had a child under the age of 16 who was planning to live with her at the unit. Am. Compl. ¶ 41. The amended complaint also alleges that the Defendants' printed and promulgated discriminatory occupancy standards and steered prospective tenants away from Wedgewood based on familial status. Am. Compl. ¶ 33, 77-78. These facts are sufficient to establish a prima facie claim under § 3604(c).

Finally, the Defendants argue that count III of the amended complaint fails to state a claim for retaliation under the Federal Fair Housing Act because the Plaintiffs have not suffered any adverse actions. In making this argument, the Defendants urge the Court to consider email correspondence between Defendants' counsel and Plaintiffs' counsel in which the Defendants stated that "nothing and no one" was preventing the Plaintiffs from participating on any Wedgewood committee. However, in ruling on a motion to dismiss, the Court must accept all well-pleaded allegations in the complaint as true and is generally limited to the four corners of the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The amended complaint pleads facts which, accepting them as true, state a cause of action for retaliation: (1) that the Plaintiffs were engaged in protected activity; (2) that they suffered adverse actions, and (3) that

15

the adverse action was causally related to the protected activity. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161 (11th Cir 2003). The amended complaint states that the Plaintiffs were told they could not participate in any Wedgewood committee because of their participation in this suit. Their participation in this suit constitutes protected activity as the exercise of rights granted or protected by the Fair Housing Act. They suffered adverse action by being denied the privileges of living in the community, and they suffered these actions because of their participation in protected activity. Accordingly, the amended complaint states a claim for retaliation.

E.  <u>Whether the amended complaint fails to state a claim for injunctive relief</u>

Counts II and III of the amended complaint seek this Court to enjoin the Defendants from discriminating against resident Plaintiffs based upon familial status and from retaliating against Plaintiffs for their participation in this suit. The Defendants argue that the amended complaint fails to state a claim for injunctive relief because the Plaintiffs have not established "a substantial threat of irreparable injury" as required to state such a claim. However, the Eleventh Circuit has held that a showing of a substantial likelihood that a defendant has violated the Federal Fair Housing Act is sufficient, by itself, to create a presumption of irreparable harm. *Gresham v. Windrush Partners, Ltd.*, 730 F.2d 1417, 1423 (11th Cir. 1984)("when a plaintiff who has standing to bring suit shows a substantial likelihood that a defendant has violated specific fair housing statutes and regulations, that alone, if unrebutted, is sufficient to support an injunction remedying those violations."). At this stage, the Court does not need to decide whether the Plaintiffs have proven that they are entitled to an injunction, but only whether they have provided sufficient facts to state a claim for one. The injunctive claims survive the Defendants' motion to dismiss because irreparable injury can be presumed if the Plaintiffs show a substantial likelihood that the Defendants have violated the FHA. The Plaintiffs do not need to make an evidentiary

showing of this in their complaint. Because the Defendants have only challenged whether the Plaintiffs have established the first element of injunctive relief, and because the Plaintiffs have filed a motion for a preliminary injunction, the Court declines to delve into the merits of Plaintiffs' claims for injunctive relief at this juncture and will consider those arguments when ruling on the Plaintiffs' Motion for a Preliminary Injunction (ECF No. 26). At this point the Court's ruling is limited to a finding that the amended complaint pleads facts that could support a showing that the Federal Fair Housing Act has been violated by Defendants and therefore states a claim for injunctive relief.

III. <u>CONCLUSION</u>

For the reasons stated above, the Court finds that the Plaintiffs have standing to assert claims for violations of the Federal and Florida Fair Housing Acts and the Broward Ordinance, that the Plaintiffs' claims have not been mooted by the Resolution to the Declaration of Condominium, and that the amended complaint sufficiently states claims for violations of the Federal and Florida Fair Housing Acts and the Broward Ordinance and for injunctive relief. Accordingly, the Defendants' Motion to Dismiss (ECF No. 25) is **DENIED**. The Defendants shall file answers to the Plaintiffs' amended complaint by **<u>October 12, 2012</u>**.

**DONE and ORDERED** in chambers at Miami, Florida, on September 18, 2012.

_____
**ROBERT N. SCOLA, JR.**
**UNITED STATES DISTRICT JUDGE**

*Copies to:*
Counsel of record